IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Gabrielle Williams and Tonya O'Donovan, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TGI Fridays, Inc.,<br><br>Defendant. | Case No.<br><br>Civil Action No. |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant, TGI Fridays, Inc. ("Defendant"), by its undersigned attorneys, pursuant to 28 U.S.C. §§ 1332, 1441 and 1445, hereby removes to the United States District Court for the Northern District of Illinois, Eastern Division, the action captioned *Williams et al. v. TGI Fridays, Inc.*, which is currently pending in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, as Case No. 16-CH-02853 ("the State Court Action").

### Background

1. On February 29, 2016, Plaintiffs Gabrielle Williams and Tonya O'Donovan ("Plaintiffs") filed a Complaint against Defendant in the Circuit Court of Cook County, Illinois County Department, Chancery Division captioned *Williams et al. v. TGI Fridays, Inc.* ("Complaint").

2. Plaintiff Williams alleges and seeks to represent a class of "all persons employed by Defendant on an hourly basis in Illinois who separated from employment during the limitations period and who did not receive a vacation payment as part of their final wages."

25994533v.2

Complaint, ¶ 16. Plaintiff O'Donovan seeks to represent a class of "all persons employed by Defendant on an hourly basis in Illinois who separated from employment during the limitations period and who failed to receive a timely vacation payment as part of final wages, *i.e.*, persons who were paid vacation, but after the time of their separation from employment and after their next regularly scheduled payday." *Id.*, ¶ 17.

3. Plaintiffs allege that the operation of Defendant's vacation policy resulted in the forfeiture of accrued vacation by Plaintiffs and other hourly employees. *Id.*, ¶ 20. Plaintiffs further allege that Defendant's failure to pay accrued vacation pay based on their hours worked in their anniversary year of employment resulted in a forfeiture of earned compensation that violated the Illinois Wage Payment and Collection Act. *Id.*, ¶ 23. Plaintiffs also allege that Defendant's failure to timely pay earned vacation pay at the time of separation from employment or on their next regularly scheduled payday also violated the Illinois Wage Payment and Collection Act. *Id.*, ¶ 24.

4. Based on these and other allegations, Plaintiffs assert a claim on behalf of themselves and potential class members for violations of the Illinois Wage Payment and Collection Act. The Complaint seeks: (1) a class action to be certified; (2) a declaration that Defendant's vacation policy is unlawful; (3) an injunction prohibiting Defendant from using a vacation policy that violates Illinois law; (4) recovery for the period from March 1, 2006 to the present for all vacation pay due and owing to class members; (5) "additional damages and prejudgment interest on the vacation pay owed" to Plaintiffs and class members; and (6) attorneys' fees and costs. *Id.*, ¶ 25.

5. The Complaint seeks recovery for the period from March 1, 2006 through the date of judgment. *Id.*, ¶ 2.

6. Defendant has not filed an answer to the Complaint in the Circuit Court of Cook County and denies all material allegations contained in the Complaint, but treats the allegations as true for purposes of this Notice of Removal.

## Compliance with Statutory Requirements

7. Defendant was served with the Complaint on March 15, 2016. *See* Exhibit B. This Notice of Removal is timely because it is being filed within 30 days of Defendant's receipt of the Summons and Complaint on March 15, 2016, and within one year of the commencement of this action. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under the applicable state law).

8. In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Complaint filed in the Circuit Court of Cook County, Illinois County Department, Chancery Division on February 29, 2016 is attached hereto as Exhibit A.

9. Pursuant to 28 U.S.C. § 1446(d), Defendant promptly will provide written notice of removal of this action to Plaintiffs, and promptly will file a copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois.

## Removal Jurisdiction Under the Class Action Fairness Act ("CAFA")

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). CAFA amended the diversity jurisdiction statute, 28 U.S.C. § 1332, by adding provisions that give federal courts original jurisdiction in class actions where the following factors are met:

    a. The aggregate amount in controversy exceeds $5,000,000;

25994533v.2

  b. Any member of the plaintiff class is a citizen of a State different from any defendant or member of the plaintiff class is a citizen or subject of a foreign state and any defendant is a citizen of a State; and

  c. The number of members of the plaintiff class is 100 or more.

28 U.S.C. § 1332(d)(d).

11.   "The language and structure of CAFA…indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (quotation marks omitted)

12.   All CAFA requirements are satisfied in this case.

***The Proposed Classes Consist of More Than 9,000 Members***.

13.   The number of putative class members exceeds 100, as required by 28 U.S.C. section 1332(d)(5)(B). *See* Declaration of KC Cunningham, ¶ 4 ("Cunningham Decl.") attached hereto as Exhibit C (indicating over 9,000 class members). This number is consistent with Plaintiffs' allegation that "Defendant employed thousands of hourly employees in Illinois during the IWPCA Class Period." Complaint, ¶ 18. This number greatly exceeds the 100 class member requirement of CAFA.

***Plaintiffs' Citizenship is Diverse from Defendant's Citizenship***.

14.   Plaintiffs and Defendant are citizens of separate states. *See* 28 U.S.C. §§ 1332(c) and (d)(2)(a).

15.   Plaintiffs are residents and citizens of the State of Illinois. The Complaint alleges that Plaintiff Williams was employed by Defendant in Chicago, Illinois and Plaintiff O'Donovan was employed by Defendant in Tinley Park, Illinois. Complaint, ¶¶ 6-7.

16. A corporation "shall be deemed a citizen of any State by which is has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

17. Defendant is a corporation organized and existing under the laws of New York. Complaint, ¶ 8.

18. As to the latter aspect of the corporate citizenship analysis, the United States Supreme Court recently addressed the varying approaches to the "principal place of business" analysis and announced a single, uniform test to be applied in making such a determination. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Specifically, the Court held that the "nerve center" test should be used to determine a corporation's "principal place of business." *Id.*

19. Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id*.

20. Defendant's principal place of business, or "nerve center," is indisputably located in Dallas, Texas. Indeed, Defendant's corporate headquarters are located in Dallas, Texas and nearly all of Defendant's executive and administrative functions are carried out at its Dallas, Texas headquarters location. (Cunningham Decl., ¶ 3.)

21. Accordingly, Defendant is not a citizen of Illinois, but rather it is a citizen of New York and Texas for purposes of determining diversity of citizenship.

22. Accordingly, because Plaintiffs are citizens of a state different from Defendant, the minimal diversity requirement of CAFA is met. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).

### *The Amount in Controversy Exceeds $5,000,000.*

23. To determine whether the amount in controversy exceeds $5,000,000, the claims of the individual class members are aggregated. 28 U.S.C. § 1332(d)(6). The amount-in-controversy requirement is met "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction: "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Senate Judiciary Committee Report, S. REP. 109-14, at 42.

24. Defendant's burden to demonstrate the amount in controversy is low. Plaintiffs need show only that there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 448 (7th Cir. 2005). If the party opposing federal jurisdiction contests the amount in controversy, the proponent must "prove those jurisdictional facts by a preponderance of the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *Oshana v. Coca–Cola Co*., 472 F.3d 506, 511 (7th Cir. 2006)).

6

25. The Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Id*. Accordingly, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448 (7th Cir. 2005)). This burden thus "is a pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). "[O]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg*, 639 F.3d at 764 (citing *Spivey*, 528 F.3d at 986; *Brill*, 427 F.3d at 448).

26. Defendant denies the validity and merit of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are based and the alleged claims for monetary and other relief that flow therefrom. For purposes of removal, however, and without conceding that Plaintiffs or the putative class is entitled to damages or penalties, it is readily apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy well exceeds the jurisdictional minimum of $5,00,000 as detailed below.

27. Plaintiffs' Complaint alleges that Defendant improperly withheld vacation pay from putative class members over a 10 year period. Plaintiffs seek: (1) a class action to be certified; (2) a declaration that Defendant's vacation policy is unlawful; (3) an injunction prohibiting Defendant from using a vacation policy that violates Illinois law; (4) recovery for the period from March 1, 2006 to the present for all vacation pay due and owing to class members; (5) "additional damages and prejudgment interest on the vacation pay owed" to Plaintiffs and class members; and (6) attorneys' fees and costs. *Id.*, ¶ 25.

28. ***Forfeiture of Vacation Pay.*** While the vacation policies at issue varied during the time period, in general, vacation was calculated by dividing the number of hours worked in the previous year by 52 weeks and multiplying by the hourly rate. (Cunningham Decl., ¶ 6.B.) Defendant estimates that Hourly employees employed by TGI Friday's during the relevant time period earned an average of $10.53 per hour. *Id.*, ¶ 6.A.

29. The amount of vacation time varied by an employee's years of service. Employees who had been with the company for longer periods of time were given more weeks of vacation. Where necessary, Defendant applied reasonable averages regarding the number of employees who would have qualified for additional weeks of vacation in any particular year. *Id.*, ¶ 6.C.

30. After applying reasonable averages, Defendant's calculations shows that the estimated amount of vacation pay in controversy – according to Plaintiffs' theory of the case, which Defendant disputes – would be approximately $7,500,000. *Id.*, ¶ 7.

31. This calculation does not include the costs of statutory penalties or interest that Plaintiffs claim in their Complaint. The IWPCA provides:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover . . . the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.

820 ILCS 115/14(a). According to Plaintiffs' theory of the case – which Defendant disputes – the imposition of those statutory penalties over more than ten years could potentially add hundreds of thousands, if not millions, to the amount in controversy.

32. Nor does it include the cost of implementing the injunctive relief which can also be included in the amount in controversy. *See e.g.*, *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004).

33. ***Attorneys' Fees***. In addition to the foregoing amount, Plaintiffs seek attorneys' fees. Attorneys' fees awarded to plaintiffs' counsel is properly considered when determining the amount in controversy. *See Oshana*, 472 F.3d at 512 ("[a]n award of fees is properly considered in addition to compensatory damages and some degree of disgorgement.").

34. In the class action context, courts have found that "courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery." *See e.g.*, *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (citations omitted). Based on the benchmark of one-third percent of the total recovery, attorneys' fees at issue in this case could be approximately $1,737,045.26 which would increase the amount in controversy to a total of $6,973,818.79.

35. Based upon Plaintiffs' allegations regarding failure to pay vacation pay, the aggregate amount in controversy, exclusive of IWCPA penalties, is well over $5,000,000.

***Entitlement to CAFA Removal***.

36. Because diversity of citizenship exists (the Plaintiffs being citizens of the State of Illinois and Defendant not being a citizen of the State of Illinois), because there are more than 100 putative class members, and because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court.

9

*Venue*.

37. Venue lies in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(d). This action originally was brought in the Circuit Court of Cook County, Illinois, which is located within the Northern District of Illinois.

*Defenses*.

38. The removal of this action to the Northern District of Illinois does not waive Defendant's ability to assert any defense to this action.

39. The statements made in this Notice of Removal are made for the purpose of removal only, and should not be used by any party for any other purpose.

WHEREFORE, Defendant prays that this civil action be removed from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois.

**DATED: April 13, 2016**　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　TGI FRIDAYS, INC.

　　　　　　　　　　　　　　　　　　　　　　By＿＿＿/s/ Gerald L. Maatman, Jr.＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　　One of Their Attorneys

Gerald L. Maatman, Jr.
(gmaatman@seyfath.com)
Matthew J. Gagnon
(mgagnon@seyfarth.com)
Thomas E. Ahlering
(tahlering@seyfarth.com)
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

25994533v.2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2016, I caused a copy of the foregoing Notice of Removal to be filed through the Court's CM/ECF system, and will serve the below Counsel of Record via First Class U.S. Mail:

> Douglas M. Werman
> Werman Salas P.C.
> 77 W. Washington St., Suite 1402
> Chicago, Illinois 60602

> /s/Gerald L. Maatman, Jr.
> Gerald L. Maatman, Jr.

25994533v.2