## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GABRIELLE WILLIAMS and TONYA O'DONOVAN, on behalf of themselves and all other persons similarly situated, known and unknown, | Case No. 16 cv 04286 |
| | Judge Kennelly |
| Plaintiffs, | |
| v. | |
| TGI FRIDAYS, INC., | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Douglas M. Werman – dwerman@flsalaw.com
Maureen A. Salas – msalas@flsalaw.com
Sarah J. Arendt – sarendt@flsalaw.com
Zachary C. Flowerree – zflowerree@flsalaw.com
Werman Salas P.C.
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

## TABLE OF CONTENTS

I.   **Introduction** ...................................................................................................1

II.   **Factual and Procedural History of the Litigation** ....................................3

III.   **Monetary Results of the Settlement** ........................................................6

IV.   **The Court's Preliminary Approval Order and Administration of Notice** ....................7

    A. THE SETTLEMENT CLASS ......................................................................7

    B. ADMINISTRATION OF SETTLEMENT NOTICE .................................................. 7

    C. NO CLASS MEMBERS OBJECTED TO THE SETTLEMENT OR REQUESTED EXCLUSION FROM THE SETTLEMENT ................................................................8

    D. SETTLEMENT ADMINISTRATION COSTS .........................................................8

V.   **The Parties Have Satisfied the Notice Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order** ................................................9

VI.   **Final Approval is Appropriate Pursuant to Rule 23(e) Because the Settlement is Fair, Adequate, and Reasonable** ................................................10

    A. STRENGTH OF PLAINTIFFS' CASE AS COMPARED TO THE AMOUNT OF THE SETTLEMENT PAYMENT ......................................................................11

    B. COMPLEXITY, LENGTH, AND EXPENSE OF FURTHER LITIGATION .................................12

    C. LACK OF OBJECTIONS TO THE SETTLEMENT ...................................................13

    D. OPINION OF CLASS COUNSEL ..................................................................13

    E. THE STAGE OF THE PROCEEDINGS AND DISCOVERY COMPLETED .................................13

VII.   **The Service Award to the Class Representative is Appropriate** ................................. 14

VIII.   **The Award to Resolve Plaintiff Williams' Individual Claims is Appropriate** .............15

IX.   **The Payment of Class Counsel's Attorneys' Fees in the Amount of $33,000 and Litigation Expenses in the Amount of $7,500 Is Reasonable** ......................................... 15

i

A.  PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS REASONABLE UNDER CLASS COUNSEL'S DISCOUNTED LODESTAR ....................................................................15

B.  CLASS COUNSEL'S REASONABLE HOURLY RATES ...................................................17

C.  CLASS COUNSEL'S AMENDED LODESTAR INCLUDES ONLY TIME SPENT ON LITIGATION RELATING TO THE INFOSYNC SETTLEMENT CLASS ...............................18

D.  THE REMAINING *HENSLEY* FACTORS WARRANT AWARDING CLASS COUNSEL'S AMENDED LODESTAR ............................................................................................19

E.  PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES FROM A PERCENTAGE OF THE FUND IS REASONABLE .....................................................................................................20

   1.  ANALYSIS OF THE MARKET FOR LEGAL SERVICES SUPPORTS PLAINTIFFS' REQUEST ......................................................................................................20

   2.  THE RISK OF NON-PAYMENT SUPPORTS THE REQUESTED ATTORNEYS' FEE AWARD ..........................................................................................................21

   3.  THE RESULTS AND BENEFITS CONFERRED UPON THE CLASS REPRESENTATIVE AND THE CLASS MEMBERS JUSTIFY THE REQUESTED AWARD .........................22

F.  CLASS COUNSEL'S REQUEST FOR LITIGATION EXPENSES IN THE AMOUNT $7,500 IS REASONABLE .............................................................................................................22

X.  **Conclusion** ......................................................................................................23

**Cases**

*Americana Art China, Inc. v. Foxfire Printing and Packaging, Inc.*
743 F.3d 243 (7th Cir. 2014) ................................................................. 15

*Armstrong v. Bd. of Sch. Dist.*
616 F.2d 305 (7th Cir. 1980) ................................................................. 11

*Arrez v. Kelly Serv., Inc.*
522 F. Supp. 2d 99 (N.D Ill. 2008) .................................................... 2, 19

*Bainter v. Akram Investments, LLC*
No. 17 C 7064, 2018 WL 4943884 (N.D. Ill. Oct. 9, 2018) .................... 18

*Bickel v. Sheriff of Whitley County*
No. 1:08-CV-102-TLS, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ................... 10

*Blum v. Stenson*
465 U.S. 896 (1984) ................................................................................ 17

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) ................................................................................ 20

*Cook v. Niedert*
142 F.3d 1004 (7th Cir. 1998) ................................................................. 14

*Dairy Farmers*
80 F. Supp. 3d 838 (N.D. Ill. Feb. 20, 2015) ......................................... 21

*Dillworth v. Case Farms Processing, Inc.*
No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ........... 12

*EEOC v. CVS Pharmacy, Inc.*
907 F. 3d 968 (7th Cir. 2018) ................................................................. 19

*EEOC v. Hiram Walker & Sons, Inc.*
768 F.2d 884 (7th Cir. 1985) ................................................................. 11

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) .................................................................................. 9

*Felzen v. Andreas*
134 F.3d 873 (7th Cir. 1998) ................................................................. 11

*Florin v. Nationsbank of Ga. N.A.*
34 F.3d 560 (7th Cir. 1994) ................................................................... 15

*Gaskill v. Gordon*
160 F.3d 361 (7th Cir. 1998) ................................................................. 21

*Gehrich v. Chase Bank USA, N.A.*
316 F.R.D. 215 (N.D. Ill. 2016) ............................................................. 14

*Golden Bear Family Rests., Inc.*

144 Ill. App. 3d 616 (1986) ............................................................................ 4, 19

*Hensley v. Eckerhart*
461 U.S. 424 (1983)...................................................................................... 15, 16

*Hispanics United of DuPage County v. Village of Addison, Illinois*
988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................................... 13

*Isby*
75 F.3d at 1199 ......................................................................................... 10, 11

*Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*
553 F.3d 487 (7th Cir. 2009) ............................................................................ 17

*Kaplan v. Houlihan Smith & Co.*
No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014); ............................ 20

*Kirkpatrick v. Cardinal Innovations Healthcare Solutions*
352 F. Supp. 3d 499 (M.D.N.C. 2018) ................................................................. 14

*Knox v. Jones Grp.*
15-cv-1738 SEB-TAB, 2017 WL 3834929  (S.D. Ind. Aug. 31, 2017) ..................... 17

*Kohler v. Bed Bath & Beyond of Cal., LLC*
780 F. 3d 1260 (9th Cir. 2015) .......................................................................... 20

*Lazy Oil Co. v. Witco*
95 F.Supp.2d 290 (W.D. Pa.1997)........................................................................ 12

*Leigh v. Bottling Grp., LLC*
No. DKC 10-0218, 2012 WL 460468 (D. Md. Feb. 10, 2012) ............................... 14

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*
834 F.2d 677 (7th Cir. 1987) ............................................................................ 11

*Martin v. Dun & Bradstreet, Inc.*
No. 1:12-cv-215, 2014 WL 9913504 (N.D. Ill. Jan. 16, 2014)............................... 21

*Mathur v. Bd. of Tr. of S. Ill. Univ.*
317 F.3d 738 (7th Cir. 2003) ......................................................................... 15, 16

*McCaster v. Darden Rests., Inc.*
845 F.3d 794 (7th Cir. 2017) ................................................................... passim

*Mouloki v. Epee*
No. 14 C 5532, 2017 WL 2791215 n.4................................................................. 17

*Munno v. Guardsmark, LLC*
Case No. 08 CH 14354 (Cir. Ct. Cook County, Order dated Feb. 15, 2013) ............ 2, 19

*Newbridge Networks Sec. Litig.*
1998 WL 765724 (D.D.C. Oct. 23, 1998) ............................................................. 12

*Ortiz v. Manpower, Inc.*
No. 11-2009, 212 WL 12903661 (C.D. Ill. Apr. 10, 2012) .................................... 2, 19

*People Who Care v. Rockford Bd. of Educ.*
   90 F.3d 1307 (7th Cir. 1996) ............................................................... 17

*Primax Recoveries, Inc. v. Sevilla*
   324 F.3d 544 (7th Cir. 2003) ............................................................... 20

*Ravisent Techs., Inc. Sec. Litig.*
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................... 12

*Reynolds v. Beneficial Nat'l Bank*
   288 F.3d 277 (7th Cir. 2002) ............................................................... 10

*Rosales v. the Placers*
   No. 09 C 1706, 2011 WL 833359 (N.D. Ill. Mar. 4, 2011) ................. 2, 19

*Sanchez v. Roka Akor Chicago LLC*
   No. 14-cv-4645, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017).................. 17, 18, 21

*Skelton v. G.M. Corp.*
   860 F.2d 250 (7th Cir. 1988) ............................................................... 20

*Snyder v. Ocwen Loan Serv., LLC*
   No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............... 10

*Soto v. Wings 'R Us Romeoville, Inc.*
   No. 15 C 10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) .............. 17

*Sottoriva v. Claps*
   617 F.3d 971 (7th Cir. 2010) ............................................................... 16

*Spegon v. Catholic Bishop of Chicago*
   175 F.3d 544 (7th Cir. 1999) ............................................................... 17

*Spellan v. Bd. Of Educ. for Dist. 111*
   59 F.3d 642 (7th Cir. 1995) ................................................................. 16

*Sutton v. Bernard*
   504 F.3d 688 (7th Cir. 2007) ............................................................... 20, 21

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
   463 F.3d 646  (7th Cir. 2005) ............................................................. 1, 10

*Synthroid Mktg. Litig.*
   264 F.3d 712 (7th Cir. 2001) ............................................................... 20

*Taubenfeld v. Aon Corp.*
   415 F.3d 597 (7th Cir. 2005) ............................................................... 21

### Rules

Fed. R. Civ. P. 23 ...................................................................................... 4, 7

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 10

Fed. R. Civ. P. 30(b)(6)............................................................................ 19

Fed. R. Civ. P. 36 ...................................................................................... 22

Rule 23(c)(2)(B)..................................................................................................................... 10

Rule 23(e)............................................................................................................................... 10

**Statutes**

Illinois Wage Payment and Collection Act............................................................. passim

## I.     Introduction

This Court should grant final approval of the Parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") because it provides a fair, adequate and reasonable result for all members of the Settlement Class.[1] *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 652 (7th Cir. 2005). The Settlement provides Class Members an average Settlement Award (even after the payment of attorney's fees, costs and the service payment) of $555.84, with the highest Settlement Award being $1,752.09. These Settlement Awards represent at least 97% of the vacation pay alleged to be owed to each Class Member (an outstanding result). The Settlement is also "non-claims made." The entire Net Settlement Fund will be distributed to all Class Members via direct U.S. Mail without requiring them to submit a claim form or take any other affirmative action. The Parties' Settlement Agreement is also supported by the members of the Settlement Class, none of whom objected or requested exclusion from the Settlement.

 Plaintiffs' request for $33,000 in attorneys' fees and $7,500 in litigation costs is also reasonable and should be approved. As either a percentage of the Settlement Fund after a lodestar crosscheck, or as a discounted lodestar, Class Counsel's requested attorney's fees are reasonable. Class Counsel eliminated all timekeepers' time except for attorney Sarah J. Arendt and paralegal Cristina Calderon and limited their billed hours to time spent on the Infosync Settlement Class. Even after these reductions, Class Counsel's lodestar is $39,019.10, or 18.2% more than

---

[1]     All capitalized terms are defined in the Parties' Class Action Settlement Agreement previously filed on the docket at ECF 131-1, Attachment 1.

Class Counsel's requested fee of $33,000. No factors exist that warrant reduction of the requested fee. Although the Court correctly stated at the preliminary approval hearing that the size of the Settlement Class reflects only a "kernel" of the class Plaintiffs originally tried to certify, Class Counsel has likewise limited their request to a kernel of the hours and money Class Counsel expended on this case.

At preliminary approval the Court questioned whether the Settlement suggested the lawsuit was improvidently filed, but Plaintiffs filed their lawsuit seeking owed vacation pay under the Illinois Wage Payment and Collection Act ("IWPCA") almost one year *before* the Seventh Circuit's ruling in *McCaster v. Darden Rests., Inc.,* 845 F.3d 794 (7th Cir. 2017). Prior to *McCaster*, Class Counsel had a history of success in cases challenging the lawfulness of vacation policies identical to Defendant's vacation policy at issue in this litigation.[2] The ultimate Settlement is proportional to the class claims that remain and it does not suggest that the case was "improvidently filed" in the first instance.

The requested service award of $1,500 to Class Representative O'Donovan is also reasonable and should be approved. O'Donovan was a conscientious Class Representative. She answered written discovery and took time off from work to travel from Marseilles, Illinois to Chicago to give her deposition. Although she could have given up after twice failing to obtain class certification, O'Donovan nevertheless persisted and her perseverance resulted in the recovery of owed vacation pay for her co-workers.

For the reasons further detailed below, the Court should grant Plaintiffs' Motion for Final

---

[2]  *See Munno v. Guardsmark, LLC,* Case No. 08 CH 14354, at *9 (Cir. Ct. Cook County, Order dated Feb. 15, 2013)*; Arrez v. Kelly Serv., Inc.* 522 F. Supp. 2d 997, 1001 (N.D Ill. 2008); *Ortiz v. Manpower, Inc.,* No. 11-2009, 212 WL 12903661, at *2 (C.D. Ill. Apr. 10, 2012); *Rosales v. the Placers,* No. 09 C 1706, 2011 WL 833359, at *1-2, *5 (N.D. Ill. Mar. 4, 2011).

Approval of Class Action Settlement.

## II.     Factual and Procedural History of the Litigation

A summary of the procedural history of the litigation was included in Plaintiffs'
Memorandum in Support of Their Unopposed Motion for Preliminary Approval of Class Action
Settlement, ECF No. 131. Plaintiffs do not repeat that information here. Because the Court
expressed concern at the preliminary approval hearing regarding Plaintiffs' request for attorneys'
fees and the requested Class Representative Service Award, however, an overview of the evolution
of Plaintiffs' class claim during the litigation may assist the Court in evaluating the Settlement and
these requests.

Plaintiffs filed their class action Complaint in the Circuit Court of Cook County on
February 29, 2016. Plaintiffs alleged that Defendant maintained a "length of service" vacation
policy but failed to pay separating employees vacation benefits that they had accrued based on
their hours worked in the prior year in violation of the IWPCA.  Notice of Removal, ECF No. 1-
1, Ex. A, Complaint, ¶¶ 22, 23. Plaintiff Williams never received a vacation payment under
Defendant's vacation policy. Plaintiff O'Donovan received a vacation payment, but only months
after her employment with Defendant ended. Thus, Plaintiff Williams sought to represent a class
of all persons employed by Defendant on an hourly basis in Illinois who separated from
employment with Defendant during the limitations period and who did not receive a vacation
payment as part of their final wages. *Id.,* ¶ 16. Plaintiff O'Donovan sought to represent a class of
all persons employed by Defendant on an hourly basis in Illinois who separated from employment
during the limitations period and who failed to receive a *timely* vacation payment as part of their
final wages. *Id.,* ¶ 17.

On January 5, 2017, almost a year *after* this lawsuit was filed, the Seventh Circuit issued

its decision in *McCaster v. Darden Rests., Inc.* 845 F.3d 794 (7th Cir. 2017). In *McCaster,* the Seventh Circuit held that it was permissible for an employer to limit paid vacation benefits to full-time employees. 845 F.3d at 799. But the *McCaster* court also affirmed the holding of *Golden Bear Family Rests., Inc. v. Murray,* 144 Ill. App. 3d 616 (App. Ct. 1st Dist. 1986) by reiterating that an employer who awards paid vacation pursuant to a length-of service vacation policy must pay separated employees accrued, unused earned vacation on a *pro rata* basis and may not condition that vacation award on employment status on an "arbitrary date." 845 F.3d at 798–99.

On May 16, 2017, Plaintiffs filed an Amended Complaint adding allegations related to a payroll error that affected Plaintiff O'Donovan and other employees (the "Infosync error") and amending the class definition to reflect the fact that Defendant closed its last stores in Illinois in November 2015. ECF No. 49, First Am. Compl., ¶ 20.

On June 29, 2017, Plaintiffs filed a motion pursuant to Fed. R. Civ. P. 23 to certify a class of "all persons employed by Defendant on an hourly basis in Illinois who separated from employment between March 1, 2006 and the end of November 2015." ECF No. 58, Mem. in Supp. of Mot. for Class Certification, at 11. Plaintiffs argued that Defendant's vacation policy was a length-of-service policy because Defendant "looked back" at the hours an employee worked during the prior year to determine how much vacation that employee had accrued. *Id.,* at 8. In one of the first attempts to certify a vacation pay class after *McCaster,* Plaintiffs argued that because Defendant's vacation policy was a length of service policy that did not distinguish between full-time and part-time employees and explicitly required employment on an arbitrary date – the employee's anniversary date or the first day of Defendant's next fiscal calendar year – to receive vacation benefits, *McCaster* was distinguishable. *Id.,* at 8, n. 4.

On February 23, 2018, the Court granted Defendant's Motion for Partial Summary

4

Judgment and terminated Plaintiffs' Motion for Class Certification as moot. ECF No. 101. The Court held that Plaintiff O'Donovan was not eligible to participate in Defendant's vacation policy during her second year of employment because she was not employed at the end of that year, as required by Defendant's policy, and that Plaintiff Williams was not eligible to participate at all because she had not worked at least 1,300 hours during her prior year of employment. *Id.,* at 5, 7.

In light of the Court's broad interpretation of *McCaster,* Plaintiff O'Donovan filed a Renewed Motion for Class Certification on April 6, 2018, amending her proposed class definition to include only those employees who had worked the required 1,300 hours during their prior year of employment but who still did not receive vacation pay as part of their final compensation. ECF No. 107, Mem. in Supp. of Renewed Mot. for Class Certification, at 8. In its response brief, Defendant argued that Plaintiff O'Donovan had failed to establish commonality and typicality. ECF No. 115, Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for Class Certification, at 10, 12. In her reply brief, Plaintiff O'Donovan addressed these arguments by narrowing the temporal scope of her class definition to include only those employees who separated from employment while Infosync was Defendant's payroll provider. ECF No. 117, Pl.'s Reply in Supp. of Mot. for Class Certification, at 3 (seeking to certify a class of "All persons employed by Defendant on an hourly basis in Illinois who separated from employment between December 24, 2014 and November 2015 who worked at least 1,300 hours in their final anniversary or vacation year but who did not receive vacation pay as part of their final compensation.").

The Court denied Plaintiff O'Donovan's Renewed Motion for Class Certification on December 12, 2018, holding that the class definitions in Plaintiff's renewed motion and in her reply failed to meet the commonality requirement of Rule 23. ECF No. 118, Mem. Op. & Order, at 3-4. The Court noted, however, that "[a] class limited to the employees who did not receive

vacation pay as part of their final compensation because of the Infosync error … may have the required commonality under *McCaster.*" *Id.,* at 5. Despite this suggestion, the Court noted at a subsequent hearing that it might not entertain a third motion for class certification. Declaration of Sarah J. Arendt ("Arendt Decl."), ¶ 15, attached hereto as Exhibit A.

On approximately January 7, 2019, the Parties reached an agreement to settle the litigation on behalf of Defendant's employees who had not received vacation pay at the time of their separation because of the Infosync error. Ex. A, Arendt Decl., ¶ 16. Pursuant to the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval of the Settlement sought $33,000 in attorneys' fees, $7,500 in litigation expenses, and a $1,500 Service Award for the Class Representative. ECF No. 131. As further explained below, these amounts have already been discounted to account for the denial of Plaintiffs' earlier attempts to certify a broader class and to exclude time spent on Plaintiffs' unsuccessful motions.

## III. Monetary Results of the Settlement

The results of the Settlement are excellent. Even *after* payment of attorneys' fees and costs, a settlement award to the Class Representative, a settlement payment to Plaintiff Williams, and settlement administration fees, the Settlement provides all Settlement Class Members with 97% or more of the vacation wages they are owed. Ex A, Arendt Decl., ¶ 21. If all possible penalties available under the IWPCA– i.e., 2% per month of the amount of the underpayment – are included in the calculation, Class Members are receiving 54% of their *maximum* total possible recovery even after the payment of attorney's fees, costs and service awards. ECF No. 131-1, Attach. 3, Werman Decl., ¶ 19.

## IV.     The Court's Preliminary Approval Order and Administration of Notice

### A.     The Settlement Class

In its Preliminary Approval Order (ECF No. 134, ¶ 5), the Court found that it would likely

be able to certify the following Settlement Class pursuant to Fed. R. Civ. P. 23:

> All former hourly employees of Defendant TGI Friday's who worked in Illinois
> and whose final compensation at the time of their separation from employment
> with Defendant did not include vacation pay because of an error committed by
> the payroll provider Infosync.

The Settlement Class is comprised of 82 Illinois hourly employees, including Class Representative

O'Donovan, who did not receive vacation pay at their time of separation because of the Infosync

error. Ex. A, Arendt Decl., ¶ 17; Declaration of Due Diligence from Caroline P. Barazesh of

Analytics Consulting LLC ("Barazesh Decl."), ¶ 5, attached hereto as Exhibit B.

### B.     Administration of Settlement Notice

Pursuant to the Preliminary Approval Order, the Parties directed the Settlement

Administrator, Analytics Consulting LLC ("Analytics"), to issue the Notice of Class Action

Settlement by the means approved by the Court and agreed to by the Parties in the Settlement. ECF

No. 134, ¶ 8.

Consistent with the Settlement, on March 20, 2019, Defendant produced a data file to

Analytics containing the contact information for the 82 Settlement Class Members. Ex. B,

Barazesh Decl., ¶ 5. The data included the names, last known mailing addresses, last known

telephone numbers, last known email addresses, and social security numbers of the Settlement

Class Members.[3] *Id.* Analytics then verified the most recent mailing address for Settlement Class

---

[3]     The data Defendant produced to Analytics did not include contact information for Class
Representative Tonya O'Donovan, which was provided to the Settlement Administrator by Class
Counsel.

Members using the National Change of Address ("NCOA") database. *Id*, ¶ 6.

On April 10, 2019, Analytics sent the approved Notice of Class Action Settlement to the last known addresses of the Settlement Class Members via first class U.S. mail and electronic mail. *Id.,* ¶ 8. Analytics also established a Toll-Free Number of 844-295-2630 to provide assistance and information to Settlement Class Members, which was included in the Notice. *Id.*

As a result of the April 10, 2019, mailing, 16 Notices were returned to Analytics as undeliverable by the Post Office. Ex. B, Barazesh Decl., ¶ 9. Analytics performed an advanced search using Experian, a reputable research tool, for Settlement Class Members whose Notices were returned as undeliverable prior to the opt-out deadline. *Id.* As a result of this search, Analytics resent six Notices with update addresses. *Id.* Two of those notices were again returned as undeliverable. *Id.* Thus, a total of 12 Notices were returned as undeliverable with no updated address available. *Id.*

### C. No Class Members Objected to the Settlement or Requested Exclusion From the Settlement

In accordance with the Settlement Agreement, Class Members are not required to file claims to receive their ratable portion of the Net Settlement Amount. ECF No. 131-1, Attach. 1, Joint Stipulation and Agreement to Settle Class Action Claims, § III.2. The deadline to opt out of the Settlement and submit objections was May 25, 2019. Ex. B, Barazesh Decl., ¶¶ 10-11. Analytics did not receive any requests for exclusion from Settlement Class Members, nor did it receive any objections to the Settlement. *Id.*

### D. Settlement Administration Costs

Analytics' total costs for services in connection with the administration of the Settlement, including fees incurred and anticipated future costs for completion of the administration, are

$6,921.00. Ex. B, Barazesh Decl., ¶ 12. This amount will be paid to Analytics directly from the Settlement Fund. ECF No. 131-1, Attach. 1, Settlement Agreement, § III.4.

## V. The Parties Have Satisfied the Notice Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order

In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Class Notice met the requirements of federal law and due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice to all individuals entitled thereto. ECF No. 134, Order, ¶ 8. The Notice approved by the Court informed Settlement Class Members of the pendency of the Class Action Litigation; the definition of the Settlement Class; the alleged claims in dispute; the terms and conditions of the proposed Settlement; the estimated amount of the Settlement Fund available for distribution to class members; the request for attorneys' fees and costs; the request for a service award for the Class Representative; the contact information for the Settlement Administrator and Class Counsel and the procedure for making inquiries; the applicable deadlines and other events, including the Final Approval Hearing; Class Members' individual rights under the Settlement, including the right to exclude themselves from the Settlement Class, and the manner and consequences for doing so; and the right to file any objections to the Settlement. ECF No. 131-1, Attach. 1, Ex. B, Notice of Class Action Settlement.

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2)(B). *Id.* Where the names and addresses

of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. This Court has also found that issuing notice of settlement by both regular U.S. mail and electronic mail is reasonable and the best notice practicable. *Snyder v. Ocwen Loan Serv., LLC,* No. 14 C 8461, 2019 WL 2103379, at \*8 (N.D. Ill. May 14, 2019) (granting final approval of a TCPA settlement where notice was issued via U.S. mail and e-mail with a toll-free number).

The procedure used to issue notice was successful. Only 12 out of 82 Notices were ultimately undeliverable. Ex. B, Barazesh Decl., ¶ 9. Thus, 85 percent of the Class Members received Notice of the Settlement. Ex. A, Arendt Decl., ¶ 24; *See Bickel v. Sheriff of Whitley County,* No. 1:08-CV-102-TLS, 2015 WL 1402018, at \*3 (N.D. Ind. Mar. 26, 2015) (requiring at least 70% of the class members to receive Settlement Notice). The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the Settlement Class Members, as described above, meet the requirements of Rule 23(c)(2)(B).

## VI.     Final Approval is Appropriate Pursuant to Rule 23(e) Because the Settlement is Fair, Adequate, and Reasonable

Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate, and not a product of collusion. *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). In determining whether a class settlement meets that standard, the Seventh Circuit has directed courts to assess: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs.,* 463 F.3d

at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). The determination that a settlement is fair is left to the sound discretion of the trial court. *Armstrong v. Bd. of Sch. Dist.*, 616 F.2d 305, 313-14 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Each of these factors warrants final approval of the Settlement.

### A. Strength of Plaintiffs' Case as Compared to the Amount of the Settlement Payment

A key consideration in evaluating a settlement is the strength of the plaintiff's case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. In deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness but must "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *Id.* at 1197-98 (*quoting EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985)). A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987).

As stated above, even after payment of attorneys' fees, litigation and settlement administration expenses, the payment to Plaintiff Williams, and the Service Award to the Class Representative, Settlement Class Members are receiving 97% or greater of the amount of vacation pay they are owed. Ex. A, Arendt Decl., ¶ 21.[4] This recovery far exceeds that approved in many other class actions. *Mars Steel Corp.*, 834 F.2d at 682 (finding adequate a settlement of 10% of

---

[4] Including all potential statutory penalties available under the IWPCA, after the payment of attorneys' fees, litigation expenses, and a service payment to the Class Representative, and a settlement payment to Plaintiff Williams, Class Members will receive 54% of their maximum total possible recovery. ECF No. 131-1, Attach. 3, Werman Decl., ¶ 19. The largest settlement payment is $1,752.09 and the average Settlement Payment to the Class Members is $555.84. *Id.,* ¶ 23.

the total sought due to risks and costs of trial); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average).[5] Indeed, the recovery is particularly strong here in light of the Court's statement that it may not entertain a third motion for class certification. Ex. A, Arendt Decl., ¶ 15. In other words, but for this Settlement, there may have been no class recovery at all.

Other settlement terms confirm that the Settlement is fair, adequate, and reasonable.

- This is a "non-claims made" settlement. Class Members will receive a check via U.S. Mail, with no pre-conditions, representing their ratable share of the Net Settlement Fund. ECF No. 131-1, Attach. 1, Joint Stipulation and Agreement to Settle Class Action Claims, § III.2.

- The Settlement Class Members are providing limited releases that only include the claims raised in the First Amended Complaint, including claims for vacation pay, interest, and statutory penalties under the IWPCA. ECF No. 131-1, Attach. 1, Joint Stipulation and Agreement to Settle Class Action Claims, § III.3(i).

This is an excellent result that supports final approval.

### B. Complexity, Length, and Expense of Further Litigation

The Parties reached this Settlement just 90 days before trial was scheduled to begin. ECF No. 131-1, Attach. 3, Werman Decl., ¶ 18. If the case had proceeded to trial, it would have been

---

[5]      *See also In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Lazy Oil Co. v. Witco*, 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness").

tried on an individual, as opposed to a class-wide, basis. *Id.,* ¶ 20. This factor favors approval of the Settlement.

### C.    Lack of Objections to the Settlement

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected). Here, no Class Members objected to the Settlement. Ex. B, Barazesh Decl., ¶ 11. In addition, no Class Members requested to exclude themselves from the Settlement following the issuance of Notice. *Id*., ¶ 10. Thus, this factor also militates in favor of approving the Settlement.

### D.    Opinion of Class Counsel

Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions, Class Counsel's opinion is that the Settlement is fair, reasonable and adequate. Ex. A, Arendt Decl., ¶ 20; ECF No. 131-1, Attach. 3, Werman Declaration, ¶ 24. Class Counsel are experienced in class action litigation and relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. Ex. A, Arendt Decl., ¶ 20; ECF No. 131-1, Attach. 3, Werman Declaration, ¶¶ 9, 18. This factor favors final approval of the Settlement.

### E.    The Stage of the Proceedings and Discovery Completed

This action was settled after more than 2.5 years of litigation. Ex. A, Arendt Decl., ¶ 16. The Parties completed written and oral discovery and Plaintiffs served a subpoena on third-party Infosync for additional documents related to the Infosync error. Ex. A, Arendt Decl., ¶ 18.  The Parties had all the information they needed to evaluate their claims. *Id.* The advanced stage of the

litigation supports granting final approval.

## VII.    The Service Award to the Class Representative is Appropriate

The Parties' Settlement Agreement provides for a Service Award for Plaintiff O'Donovan in the amount of $1,500. ECF No. 131-1, Attach. 1, Joint Stipulation and Agreement to Settle Class Action Claims, § III.7.iii. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Class Representative O'Donovan took substantial action and spent a significant amount of time pursing the litigation on behalf of Class Members. Ex. A, Arendt Decl., ¶ 27. She remained an active participant throughout the litigation. She answered written discovery, produced documents, traveled to Chicago to sit for a deposition, and otherwise assisted Class Counsel with the prosecution of the litigation and recovery of wages on behalf of all Class Members. *Id.* The requested Service Award of $1,500 for the Class Representative equals just 1.57% of the total Settlement. Ex. A, Arendt Decl., ¶ 28. *See Kirkpatrick v. Cardinal Innovations Healthcare Solutions,* 352 F. Supp. 3d 499, 508 (M.D.N.C. 2018) (approving service award that constituted 1.3% of the total settlement fund); *Leigh v. Bottling Grp., LLC,* No. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012) (approving incentive fee that constituted less than one and one-half percent of the total settlement fund). Courts in this Circuit routinely approve service awards comparable or larger than the amount sought here, including when the class representative performs little work in the litigation. *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 239 (N.D. Ill. 2016) (Feinerman, J.) (awarding "truly nominal" $1,500 service awards to five named plaintiffs in a case that "did not proceed past the earliest phases of formal discovery before it settled");

14

*Chesemore v. Alliance Holdings, Inc.,* No. 09-cv-413-wmc, 2014 WL 4415919, at *5 (W.D. Wis. Sept. 5, 2014) (courts in this Circuit approve service awards ranging from $5,000 to $25,000) (collecting cases). This supports approval of the requested Service Award.

## VIII. The Award to Resolve Plaintiff Williams' Individual Claims is Appropriate

The Settlement Agreement provides for a $500 payment to Plaintiff Williams as consideration for the waiver of her right to appeal the Court's Order Granting Defendant's Motion for Partial Summary Judgment. ECF No. 131-1, Attach. 1, Settlement Agreement, § III.8. No Class Member has objected to this payment to Plaintiff Williams, which represents just 0.5% of the total Settlement. Ex. B, Barazesh Decl., ¶ 11; Ex. A, Arendt Decl., ¶ 30. Thus, the payment to Plaintiff Williams should be approved.

## IX. The Payment of Class Counsel's Attorneys' Fees in the Amount of $33,000 and Litigation Expenses in the Amount of $7,500 Is Reasonable

In common fund settlements like this, the Court has discretion to award attorneys' fees based on the lodestar method or on a percentage of the fund basis. *Americana Art China, Inc. v. Foxfire Printing and Packaging, Inc.,* 743 F.3d 243, 247 (7th Cir. 2014) citing *Florin v. Nationsbank of Ga. N.A.,* 34 F.3d 560, 566 (7th Cir. 1994). Class Counsel's request for attorneys' fees in the amount of $33,000 is appropriate under both methods.

### A. Plaintiffs' Request for Attorneys' Fees is Reasonable Under Class Counsel's Discounted Lodestar

Reasonable attorneys' fees are often determined using the lodestar approach. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Counsel's lodestar is calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. *Mathur v. Bd. of Tr. of S. Ill. Univ.,* 317 F.3d 738, 742 (7th Cir. 2003). The district court may adjust the lodestar to take into account various factors regarding the litigation, including "the time and labor

15

required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases." *Id.,* citing *Spellan v. Bd. Of Educ. for Dist. 111,* 59 F.3d 642, 645 (7th Cir. 1995).

While "a plaintiff need not prevail on every claim or legal theory to receive fully compensatory attorney's fees," where a plaintiff prevails on only some of her interrelated claims, the district court may attempt to identify specific hours that should be eliminated from the calculation of counsel's lodestar. *Sottoriva v. Claps,* 617 F.3d 971, 975-96 (7th Cir. 2010) citing *Hensley,* 461 U.S. at 435-37. Mindful that the Settlement Class is smaller than the proposed classes Plaintiffs sought to certify at the start of the litigation, Class Counsel has recalculated their original lodestar and excluded all work that was not related to representation of the Infosync Settlement Class. Ex. A, Arendt Decl., ¶ 31. To further demonstrate the reasonableness of Plaintiffs' request for attorneys' fees, Class Counsel's amended lodestar excludes all work performed by all attorneys and support staff, including lead attorney Douglas M. Werman, except for attorney Sarah J. Arendt and paralegal Cristina Calderon. Ex. A, Arendt Decl., ¶ 32. Class Counsel's amended lodestar was calculated based solely on the time Ms. Arendt and Ms. Calderon spent working on portions of the case related to the Infosync Settlement Class, at their regular hourly billing rates. *Id.* A list of the time entries included in calculating this amended lodestar is attached to the Declaration of Sarah J. Arendt as Attachment 1. Class Counsel's amended lodestar of $39,019.10 is still approximately 18.2% greater than the amount of fees sought by Class Counsel under the Settlement. Ex. A, Arendt

16

Decl., ¶ 40. Therefore, Plaintiffs' request for attorneys' fees should be granted.

**B.    Class Counsel's Reasonable Hourly Rates**

For purposes of determining reasonable attorneys' fees, the hourly rate is calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson,* 465 U.S. 896, 895 (1984). As the Seventh Circuit explained, "our cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation." *Jeffboat*, *LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Where a lawyer commonly charges clients by the hour, the regular billing rate is presumptively the market rate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). If an attorney works on a contingent-fee basis, however, courts look to the rate charged by lawyers in the community "of reasonably comparable skill, experience, and reputation." *People Who Care,* 90 F.3d at 1310 quoting *Blum,* 465 U.S. at 892, 895 n. 11 (1984).

Ms. Arendt bills hourly paying clients between $400 and $430 per hour. Ex. A, Arendt Decl., ¶ 36. Ms. Arendt has been awarded $400 per hour in wage and hour cases by multiple courts in this circuit. Ex. A, Arendt Decl., ¶ 37. *See Knox v. Jones Grp.,* 15-cv-1738 SEB-TAB, 2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017); *Soto v. Wings 'R Us Romeoville, Inc.,* No. 15 C 10127, 2018 WL 1875296, at *4 (N.D. Ill. Apr. 16, 2018); *Sanchez v. Roka Akor Chicago LLC,* No. 14-cv-4645, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017). And another court in this district used Ms. Arendt's $400 rate as a standard for "younger lawyers" when evaluating the fee petition of other attorneys in unrelated litigation. *Id.*; *See Mouloki v. Epee,* No. 14 C 5532, 2017 WL 2791215, at *3, n.4 (referring to the attorneys at Werman Salas P.C. as "highly respected and experienced lawyers" who "specialize[] in wage and hour law."). Ms. Arendt and her colleagues

at Werman Salas P.C. have been recognized "as national leaders in advocating the rights of working people in wage and hour litigation." *Sanchez,* 2017 WL 1425837, at *6 (Kendall, J). Ex. A, Arendt Decl., ¶ 37.

Likewise, Ms. Calderon, who reviewed the time and pay data produced by Defendant and determined damages for the Settlement Class, regularly bills $230 per hour and has been awarded $230/hr for her work as a paralegal for Class Counsel. Ex. A, Arendt Decl., ¶¶ 38-39. *See Bainter v. Akram Investments, LLC,* No. 17 C 7064, 2018 WL 4943884, at *5 (N.D. Ill. Oct. 9, 2018).

### C.   Class Counsel's Amended Lodestar Includes Only Time Spent on Litigation Relating to the Infosync Settlement Class

Class Counsel's amended lodestar excludes all time spent briefing Plaintiffs' Motion for Class Certification (ECF No. 57), Plaintiffs' Response to Defendant's Motion for Summary Judgment (ECF No. 87), Plaintiffs' Response to Defendant's Motion to Exclude Plaintiffs' Expert Witness (ECF No. 91), Plaintiffs' Motion for Reconsideration of the Court's Order Granting Partial Summary Judgment (ECF No. 104), and Plaintiff O'Donovan's Renewed Motion for Class Certification (ECF No. 106). Ex. A, Arendt Decl, ¶ 33. The amended lodestar also excludes time related to the Parties' unsuccessful mediation, including drafting Plaintiffs' mediation statement; all expert discovery, including preparation of Plaintiffs' expert report and amended expert report and the depositions of both Plaintiffs' and Defendant's expert witnesses; Plaintiff Williams' deposition; and time spent calculating damages for Plaintiffs' earlier proposed classes. *Id.*

In calculating their amended lodestar, Class Counsel included only time spent on the following: drafting the Complaint; completing initial written discovery and resolving discovery disputes related to Defendant's production of time and pay data; the Fed. R. Civ. P. 30(b)(6)

18

deposition of Defendant[6]; Class Counsel's subpoena to payroll provider Infosync; drafting the Amended Complaint; reviewing Defendant's pay data to identify members of a potential Infosync error class; briefing the Response in Opposition to Defendant's Memorandum Regarding Privilege Designations Relating to Infosync Communications (ECF No. 71); Class Representative O'Donovan's deposition; settlement negotiations with Defendant regarding the Infosync error Settlement Class; drafting the Settlement Agreement; and drafting the Motion for Preliminary Approval of Settlement. Ex. A, Arendt Decl., ¶ 35. In total, Ms. Arendt spent 82.5 hours and Ms. Calderon spent 26.17 hours on these activities. Ex. A, Arendt Decl., ¶ 40, Attach. 1.

### D. The Remaining *Hensley* Factors Warrant Awarding Class Counsel's Amended Lodestar

The remaining *Hensley* factors, including the novelty and difficulty of the questions litigated, further support the award of attorneys' fees. Class Counsel have successfully litigated vacation pay cases under the IWPCA for years. Ex. A, Arendt Decl., ¶ 13. Class Counsel was Plaintiff's counsel in *McCaster* and took the lead in arguing that *McCaster* should be read narrowly to comply with the precedent established by *Munno, Arrez, Ortiz, Rosales,* and *Golden Bear,* which included vacation policies almost identical to Defendant's policy here. *Id. See Munno v. Guardsmark, LLC,* Case No. 08 CH 14354, at *9 (Cir. Ct. Cook County, Order dated Feb. 15, 2013)*; Arrez v. Kelly Serv., Inc.* 522 F. Supp. 2d 997, 1001 (N.D Ill. 2008); *Ortiz v. Manpower, Inc.,* No. 11-2009, 212 WL 12903661, at *2 (C.D. Ill. Apr. 10, 2012); *Rosales v. the Placers,* No. 09 C 1706, 2011 WL 833359, at *1-2, *5 (N.D. Ill. Mar. 4, 2011); *Golden Bear Family Rest., Inc.,* 144 Ill. App. 3d 616, 627 (App. Ct. 1st Dist. 1986)*. "Novel interpretations succeed or fail, but the

---

[6] Defendant's corporate representative testified about the Infosync error during the Rule 30(b)(6) deposition.

law 'grows with clarity for the benefit of the public' whatever the outcome." *EEOC v. CVS Pharmacy, Inc.* 907 F. 3d 968, 975 (7th Cir. 2018) citing *Kohler v. Bed Bath & Beyond of Cal., LLC,* 780 F. 3d 1260, 1267 (9th Cir. 2015). The Court should grant Class Counsel's request for fees in light of their efforts to clarify the scope of *McCaster*.

### E. Plaintiffs' Request for Attorneys' Fees From a Percentage of the Fund is Reasonable

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478. Class Counsel's request for attorneys' fees is also appropriate under a percentage of the fund analysis.

### 1. Analysis of the Market for Legal Services Supports Plaintiffs' Request

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton,* 504 F.3d at 692-94, citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately

negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.,* 415 F.3d 597, 599 (7th Cir. 2005). Here, Class Counsel seeks to recover 34.7% of the common fund. Ex. A, Arendt Decl., ¶ 41.  Courts in the Seventh Circuit often grant attorney's fees of up to 40% in common fund class settlements. *See, e.g. Taubenfeld,* 415 F.3d at 600 (courts in the Northern District of Illinois have awarded fees of 30-39% of the class settlement fund); *Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998) (affirming attorneys' fee award of 38% of the common fund); *Sanchez,* 2017 WL 1425837, at *6 (approving request for 39.5% of the common fund); *In re Dairy Farmers*, 80 F. Supp. 3d 838, 845 (N.D. Ill. Feb. 20, 2015) (in class actions, "usual range for contingent fees is between 33 and 50 percent"); *Martin v. Dun & Bradstreet, Inc.,* No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (granting attorneys' fees equal to 36.3% of the common fund). Thus, Class Counsel's requested fees are consistent with amounts awarded in common fund settlements in this district.

### 2.    The Risk of Non-Payment Supports the Requested Attorneys' Fee Award

Class Counsel's request for attorneys' fees is also reasonable considering the significant risks of nonpayment Class Counsel faced. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Class Counsel filed this case before *McCaster* was decided and were foreclosed from certifying a broader class because of *McCaster*. Class Counsel now seeks an amended lodestar to reflect the scope of the Settlement Class, and their risk of non-payment if the settlement had not been reached supports this request.

### 3. The Results and Benefits Conferred Upon the Class Representative and the Class Members Justify the Requested Award

The benefits conferred on the Settlement Class are significant. Even after the payment of attorneys' fees and costs, all litigation and settlement administration expenses, the settlement payment to Plaintiff Williams, and the service award to the Class Representative, Class Members are receiving 97% or more of the vacation pay owed to them, and most Class Members are receiving additional statutory penalties under the IWPCA Ex. A, Arendt Decl., ¶¶ 21-22. Six Settlement Class Members who were owed less than $50 in vacation pay and statutory penalties have had their awards increased to $50. Ex. A, Arendt Decl., ¶ 23. And the average Settlement Payment to Class Members is $555.84. ECF No. 131-1, Attach. 3, Werman Decl., ¶ 23.

### F. Class Counsel's Request for Litigation Expenses in the Amount $7,500 is Reasonable

Class Counsel also seeks to recover $7,500 in reasonably incurred legal expenses. The requested expenses include the filing fee, postage, research fees, travel expenses, the transcripts from the Fed. R. Civ. P. 36 deposition of Defendant and the Class Representative's deposition, and 20.2% of the mediation fee paid by Plaintiffs' Counsel for the unsuccessful mediation. Ex. A, Arendt Decl., ¶ 42, Attach. 2. Like Class Counsel's amended lodestar, the request excludes all fees related to the deposition of Plaintiff Williams, Plaintiffs' expert witness fees, and fees associated with expert depositions. *Id.* Class Counsel's request for litigation expenses is eminently reasonable and should be granted. The requested costs are:

|  | Amount |
| --- | --- |
| Filing Fee | $589.00 |
| Service of Complaint | $42.00 |
| Research (Westlaw) | $755.97 |
| Communications (FedEx, Postage, Binding, etc.) | $55.24 |
| Travel (Parking, Airfare, Ground Transportation, etc.) | $2,663.67 |

| Photocopies | $71.25 |
| Transcripts | $1,460.05 |
| Mediation Fee (20.2% of actual fee paid) | $1,862.82 |
| **Total Costs** | **$7,500.00** |

*Id.*

## X.    Conclusion

For the reasons set forth above, the Parties' Settlement is fair, reasonable, and adequate and provides Settlement Class Members with all or substantially all of the vacation pay they are owed, as well as some statutory penalties under the IWPCA. Class Counsel's request for attorneys' fees and costs reflects the narrow Settlement Class and excludes time spent on issues where Plaintiffs did not prevail. The Court should therefore approve the Parties' Settlement Agreement, grant Class Counsel's request for attorneys' fees in the amount of $33,000 and litigation expenses in the amount of $7,500, approve the $500 settlement payment to Plaintiff Williams, and approve the service award to the Class Representative O'Donovan in the amount of $1,500.

Dated: July 3, 2019                    Respectfully submitted,

                                       /s/Sarah J. Arendt
                                       One of the Attorneys for Plaintiffs